

# NUMBER 13-23-00342-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CITY OF SAN ANTONIO,
ACTING BY AND THROUGH
CITY PUBLIC SERVICE BOARD,                                    Appellant,

v.

SPECTRUM GULF COAST, LLC,                                    Appellee.

## ON APPEAL FROM THE 408TH DISTRICT COURT
## OF BEXAR COUNTY, TEXAS

## MEMORANDUM OPINION

Before Justices Benavides, Tijerina, and Silva
Memorandum Opinion by Justice Silva

Appellant City of San Antonio, acting by and through City Public Service Board

(CPS Energy), appeals the trial court's order granting partial summary judgment in favor

of appellee Spectrum Gulf Coast, LLC (Spectrum).[1] By five issues, CPS Energy argues that the trial court erred by entering a partial summary judgment finding that it breached its 1984 contract with Spectrum because (1) the contract provision requiring compliance with all applicable laws did not contemplate or incorporate a 2005 statute; (2) even if the contract incorporated future laws, it did not incorporate the 2005 statute; (3) the 2005 statute only applied to contracts entered into after September 1, 1995; (4) Spectrum's breach of contract action is improperly predicated on violation of a statute that provides no private right of action; and (5) the 2005 statute's prohibition on price discrimination was not violated. We reverse and remand.

## I. BACKGROUND[2]

According to Spectrum's live pleading, it entered into a contract with CPS Energy in 1984 that allowed Spectrum to use CPS Energy's utility poles to provide communications services, such as broadband internet service.[3] Part of the contract required the parties to "observe and comply with . . . all laws, ordinances, and regulations

---

[1] This appeal is governed by the September 1, 2005 amendment to Texas Civil Practice and Remedies Code § 51.014(d), which allows a trial court to issue a written order permitting an interlocutory appeal if: "(1) the parties agree that the order involves a controlling question of law as to which there is a substantial ground for difference of opinion; (2) an immediate appeal from the order may materially advance the ultimate termination of the litigation; and (3) the parties agree to the order." Act of June 18, 2005, 79th Leg., ch. 1051, § 2005 Tex. Gen. Laws 3512, 3512–13 §§ 1, 2, eff. June 18, 2005 (amended 2011) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d)).

[2] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer). Because this is a transfer case, we apply the precedent of the San Antonio Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

[3] The contract was originally between Rogers Cablesystems of Texas and CPS Energy; however, Spectrum is Rogers' successor in interest. For simplicity's sake, we discuss the contract as being entered into between Spectrum and CPS Energy.

which in any manner affect the rights and obligations of the parties hereto under the [a]greement, so long as such laws, ordinances[,] or regulations remain in effect."

In 2005, the Legislature amended § 54.204 of the Texas Utilities Code, which prohibits "discriminat[ion] in favor of or against a certified telecommunications provider regarding municipal utility pole attachment." TEX. UTIL. CODE ANN. § 54.204(b)(1). Moreover, § 54.204(c) states:

> [a] municipality or a municipally owned utility may not charge any entity, regardless of the nature of the services provided by that entity, a pole attachment rate or underground conduit rate that exceeds the fee the municipality or municipally owned utility would be permitted to charge under rules adopted by the Federal Communications Commission [(FCC)] under 47 U.S.C. [§] 224(e) if the municipality's or municipally owned utility's rates were regulated under federal law and the rules of the [FCC]. In addition, not later than September 1, 2006, a municipality or municipally owned utility shall charge a single, uniform pole attachment or underground conduit rate to all entities that are not affiliated with the municipality or municipally owned utility regardless of the services carried over the networks attached to the poles or underground conduit.

*Id.* § 54.204(c).

Spectrum's live pleading further alleged that CPS Energy violated the law by effectively charging it and AT&T substantially different pole attachment rates, to AT&T's advantage. Spectrum discovered the discrepancy and paid its invoices under protest. Eventually, the Texas Public Utility Commission (PUC) concluded that CPS Energy's conduct violated § 54.204(b), a holding that was affirmed by the Supreme Court of Texas in 2019. *See Time Warner Cable Tex. LLC v. CPS Energy*, 593 S.W.3d 291, 296 (Tex. 2019). Spectrum also claimed that the PUC found that CPS Energy violated § 54.204(c) by charging it in excess of the maximum allowable rates in 2008, 2009, and 2010, though, the Supreme Court of Texas declined to review that finding. Spectrum brought six causes

3

of action against CPS Energy: (1–2) violations of § 54.204(b), (c); (3) breach of contract; (4) breach of fiduciary duty; (5) unjust enrichment; and (6) negligence. *See* TEX. UTIL. CODE ANN. § 54.204(b), (c).

CPS Energy filed a counterclaim, alleging in its live petition that Spectrum breached their contract by failing to pay the contracted-for rates. CPS Energy's causes of actions included (1) breach of contract, (2) violation of the Texas Theft Liability Act, and (3) violations of the Texas Penal Code. CPS Energy also sought declaratory relief.

Each party filed a competing motion for partial summary judgment on their breach of competing contract claims, specifically seeking partial summary judgment as to the element of breach. The trial court ultimately granted Spectrum's motion for partial summary judgment, finding that CPS Energy breached the parties' contract. The trial court also granted CPS Energy's request for permissive appeal, posing the controlling question of law as: "Whether CPS Energy breached the parties' agreement by unlawfully imposing discriminatory rates on Spectrum[?]" *See* Act of June 18, 2005, 79th Leg., R.S., ch. 1051, § 2, 2005 Tex. Gen. Laws. 3512, 3512–13 (amended 2011) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d)) (allowing permissive appeals only when the appealed order "involves a controlling question of law" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation"); *Indus. Specialists, LLC v. Blanchard Refin. Co.*, 652 S.W.3d 11, 16 (Tex. 2022) (discussing these requirements and explaining that "courts have no discretion to permit or accept an appeal if the two requirements are not satisfied").

4

## II. STANDARD OF REVIEW AND APPLICABLE LAW

"The elements of a breach of contract claim are '(1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach.'" *Brooks v. Excellence Mortg., Ltd.*, 486 S.W.3d 29, 36 (Tex. App.—San Antonio 2015, pet. denied) (quoting *McLaughlin, Inc. v. Northstar Drilling Techs., Inc.*, 138 S.W.3d 24, 27 (Tex. App.—San Antonio 2004, no pet.)). "A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform." *Tabe v. Tex. Inpatient Consultants, LLLP*, 555 S.W.3d 382, 385 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (quoting *Case Corp. v. Hi–Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 769–70 (Tex. App.—Dallas 2005, pet. denied)). "[I]t is the objective intent of the parties as expressed in the text of the mutually agreed-upon contract, and not [a party]'s subjective intent at the time of signing, that controls the breach of contract analysis." *In re Gaudet*, 625 S.W.3d 887, 894 (Tex. App.—El Paso 2021, no pet.) (orig. proceeding).

Construction of a contract is a question of law that we review de novo. *Rieder v. Woods*, 603 S.W.3d 86, 94 (Tex. 2020). Our primary objective is to ascertain the parties' true intentions as expressed in the language they chose, construing the contract in a manner that gives effect to the parties' intent while considering the facts and circumstances surrounding the contract's execution. *Id.* If a written instrument is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous. *Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 450 (Tex. 2015).

"The general rule is that the laws which are in existence at the time of the making

of the contract are impliedly incorporated into the contract." *Progressive Cnty. Mut. Ins. Co. v. Caltzonsing*, 658 S.W.3d 384, 393 (Tex. App.—Corpus Christi–Edinburg 2022, no pet.); *Est. of Griffin v. Sumner*, 604 S.W.2d 221, 230 (Tex. App.—San Antonio 1980, writ ref'd n.r.e.). A contractual right acquired pursuant to the laws existing at the time the contract was entered into cannot be taken away by a subsequent statute. *Wessely Energy Corp. v. Jennings*, 736 S.W.2d 624, 626 (Tex. 1987) ("The laws existing at the time a contract is made becomes a part of the contract and governs the transaction."); *see Est. of Griffin*, 604 S.W.2d at 230 ("A substantive right conferred by the existing law . . . may not be defeated by a subsequent amendment of the law."). Therefore, a contractual obligation, which includes the relevant law in force at the time the contract is made, cannot be impaired by a subsequent change in the law that applies retroactively. *Cardenas v. State*, 683 S.W.2d 128, 131 (Tex. App.—San Antonio 1984, no writ). The bar against laws impairing the obligation of contracts is enshrined in the Texas Constitution's Bill of Rights. TEX. CONST. art. I, § 16.

### III.    ANALYSIS

The permissive appeal question presented before us is: "Whether CPS Energy breached the parties' contract by unlawfully imposing discriminatory rates on Spectrum[?]" *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d); *see also Northside Indep. Sch. Dist. v. Dubose*, No. 04-06-00517-CV, 2007 WL 1481661 (Tex. App.—San Antonio May 23, 2007, no pet.) (mem. op.) (answering the question of law as posed by the trial court under § 51.014(d)). CPS Energy poses five arguments as to why it did not breach the contract: (1) the contract provision requiring compliance with all applicable

laws did not contemplate or incorporate a 2005 statute; (2) even if the contract incorporated future laws, it did not incorporate the 2005 statute; (3) the 2005 statute only applied to contracts entered into after September 1, 1995; (4) Spectrum's breach of contract action is improperly predicated on violation of a statute that provides no private right of action; and (5) the 2005 statute's prohibition on price discrimination was not violated.

## A.    Continued or Renewed?

Embedded in CPS Energy's arguments is a question as to the duration and term of the contract. Accordingly, we begin by addressing the relevant provision, which states:

> This [a]greement shall become effective upon the date first written above. In the event Licensee for any reason does not furnish service to all the Licensor's service area within thirty-six (36) months from the date hereof, Licensor may terminate this [a]greement to any portion of the service area not then being served by Licensee by giving thirty (30) days written notice thereof to Licensor. **If attachment rights are not terminated in accordance with the provisions of other sections of this [a]greement, this [a]greement shall remain in effect for a term of one (1) year from the effective date of this [a]greement and thereafter continue in effect from year to year, subject to the right of either party hereto to terminate this [a]greement at any time after giving to the other party at least six (6) months prior written notice thereof.**

(Emphasis added). Spectrum argues that "continuing in effect from year to year" indicates that the contract "renews" each year and thus adopts the laws in effect at the time of renewal. CPS Energy counters that the clause means the terms of the contract as entered into in 1984 continue in effect until it is canceled or expressly modified, and therefore the parties are bound by the laws in effect at the time the contract was originally entered.

Neither party provided citation to any controlling authority directly discussing the distinction between renewing and continuing or the language at issue here. Spectrum

7

provided several cases that it argues support its position, but upon closer inspection, they do not. For example, citing *National Safe Deposit Co. v. Stead*, Spectrum argues the Supreme Court decided the issue in a way that favors its position. *See* 232 U.S. 58, 71 (1914) ("As it now appears that all of the rentals were from year to year, and that all had expired before final hearing, and were renewed after the passage of the law, it can also be said that all such contracts of joint rental are made in the light of the provisions of this particular statute."). However, the language used in that contract is not detailed by the Supreme Court, so we are unable to compare it with the language of the contract here. *See id.* Moreover, it is not clear whether the contracts in that case expired and were "renewed" automatically or whether the parties entered into new contract. *See id.*

Spectrum also cites *Northshore Cycles, Inc. v. Yamaha Motor Corp., U.S.A.* from the Fifth Circuit Court of Appeals for the same proposition. *See* 919 F.2d 1041, 1043 (5th Cir. 1990) (per curiam) ("[A] contract for a specified term such as one year or three years, which provides for automatic renewal from year to year or month to month unless one party notifies the other declining renewal, would likely not be constitutionally exempt from the Statute's inventory repurchase provisions if following the effective date of the Statute the then current term of the contract had expired and been automatically renewed."). However, the language relied upon is dicta, and the Fifth Circuit actually held that the parties chosen language—"shall continue until terminated as provided herein"— exempted the application of the later-enacted statute, leading the court to dismiss the suit for failure to state a claim upon which relief may be granted. *Id.* at 1042, 1044.

Spectrum next relies on *Great American Indemnity Co. v. State*, where the Austin

8

Court of Appeals held:

> It is the general rule that a renewal of a policy constitutes a separate and distinct contract for the period of time covered by the renewal, except where the provisions of the extension certificate show that the purpose and intention of the parties was not to make a new contract but was to continue the original contract in force. And "such limitation must be found in clear and unambiguous terms within the four corners of the certificate."

229 S.W.2d 850, 853 (Tex. App.—Austin, 1950 writ ref'd) (quoting *Krey Packing Co. v. Employers' Liab. Assur. Corp., Ltd., of London, England*, 127 S.W.2d 780, 783 (Mo. App. 1939)). But *Great American* actually supports CPS Energy's position that the parties specifically contracted for the original contract's terms to remain in force. *See id.* (noting that parties can expressly "continue the original contract in force"). Here, the clause in question includes the phrase "continue in effect" from year to year. *See id.*; *compare Continue*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/continue (last visited June 5, 2024) (defining "continue" as "to maintain without interruption a condition, course, or action"), *with Renew*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/renew (last visited June 5, 2024) (defining "renew" as "to become new or as new" or "to begin again").

Lastly, Spectrum cites *McDonald v. Roemer* for the proposition that a year-to-year lease where either party has the right to terminate at the end of the term is not subject to the statute of frauds' requirement to be in writing because it was for less than one year. *See* 505 S.W.2d 698, 699 (Tex. App.—San Antonio, 1974 no writ). But, in *McDonald*, the court again recognized a distinction between continuing a contract and renewing it: "However, a distinction is made between a provision in a lease for a renewal with permission of lessor, and a provision for the extension of the term at the option of the

9

lessee; and only the latter is treated as a demise for the full term." *Id.* (citing *Bailey v. Willeke*, 185 S.W.2d 456 (Tex. App.—Austin 1945), *modified and aff'd*, 189 S.W.2d 477, 481 (Tex. 1945)). Thus, *McDonald* is inapposite to the issue at hand.[4]

Here, because the parties specifically agreed for the contract to "continue in effect," we conclude that they contracted for the original terms to remain in effect until the contract was properly cancelled by either party, as opposed to "renewing" each year and thus adopting the new statutes. *See Rieder*, 603 S.W.3d at 94. We next consider whether the contract was written to adopt subsequently passed statutes.

**B.     Did the Contract Adopt § 54.204?**

Generally, a contract incorporates the law as written at the time it is entered, even if the parties do not expressly state that it does so. *See Caltzonsing*, 658 S.W.3d at 393; *Est. of Griffin*, 604 S.W.2d at 230. Moreover, the law in effect at the time a contract is entered should govern the fulfillment of the contract. *See Jennings*, 736 S.W.2d at 626. "This doctrine is based on the presumption that the parties to a contract knew and took into consideration the law in effect at the time of contract*." Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 155 (Tex. App.—Fort Worth 2007, pet. denied). Here, the parties expressly adopted the applicable law as part of the contract without mention of subsequent amendments or statutes. In contrast, in the same paragraph, the contract states that Spectrum shall comply with the provisions of Texas Revised Civil Statutes Article 1436c "and any amendments thereto." Thus, not only does well-established law direct us to the

---

[4] Spectrum also cites a series of Federal Communication Commission administrative opinions but none of those cases involve an alleged breach of contract nor the language at hand. Accordingly, those cases are also inapposite.

10

conclusion that the contract did not adopt § 54.204, which was enacted twenty years after the contract was entered, but so, too, does the parties' chosen language in the contract. *See Rieder*, 603 S.W.3d at 94; *Jennings*, 736 S.W.2d at 626.

Because Spectrum's breach of contract claim was predicated on the contract's adoption of § 54.204, we answer the question of law posed by the trial court—"Whether CPS Energy breached the parties' agreement by unlawfully imposing discriminatory rates on Spectrum[?]"—in the negative. We sustain CPS Energy's first issue.[5]

### IV.    CONCLUSION

We reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.

CLARISSA SILVA
Justice

Delivered and filed on the
27th day of June, 2024.

---

[5] Because CPS Energy's first issue is dispositive, we need not reach its remaining issues. *See* TEX. R. APP. P. 47.4 (directing appellate courts to write memorandum opinions "no longer than necessary to advise the parties of the court's decision and the basic reasons for it").